WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Patricia Haro, John G. Balentine, and Jack McNutt, and a class of persons similarly situated,

Plaintiffs,

v.

Kathleen Sebelius, Secretary, U.S. Department of Health and Human Services,

Defendant.

CV 09-134 TUC DCB

**ORDER**

The Court denies the Defendant's Motion to Dismiss because the Plaintiffs have standing to bring this action; the jurisdictional exhaustion requirements for review under 42 U.S.C. 405(g) are waived, and Plaintiffs state claims against Defendant under the Medicare Act and the Due Process Clause to the United States Constitution.

**Plaintiffs' Amended Complaint**

Plaintiffs seek to represent a nationwide class of Medicare recipients challenging Defendant's administration of the Medicare Secondary Payer (MSP) program. The Medicare statute provides that other insurance that covers health care for Medicare beneficiaries is primary to Medicare. (Amended Complaint at ¶ 12 (citations omitted)). When a liability insurer does not pay "promptly," defined as within 120 days of service, Medicare makes a "conditional" payment for the care, and may recover this cost by reimbursement from the beneficiary "within 60 days of receipt of information about the insurer's responsibility." *Id.* Medicare may charge interest on the reimbursement amount until it is paid. *Id.*

Beneficiaries are entitled to appeal the amount claimed by the Defendant for reimbursement and to seek a hardship waiver of the reimbursement claim. *Id.* at ¶ 13.

Plaintiffs, Medicare beneficiaries, challenge the collection practices used to recover Medicare reimbursement claims when a beneficiary receives liability insurance proceeds related to health care services paid for "conditionally" by the Defendant. *Id.* at ¶ 2. Specifically, the Plaintiffs assert that the Secretary violates the due process rights of a Medicare beneficiary by demanding immediate reimbursement, within 60 days, in advance of resolution of any appeal or request for a waiver of the reimbursement claim sought by Medicare. *Id.* Plaintiffs assert that MSP reimbursement claims are frequently in excess of the actual amount conditionally expended by Medicare because during the time it takes to resolve insurance claims that are not "promptly" paid there are usually other Medicare claims for the beneficiary for ordinary health services unrelated to the incident covered by the insurance proceeds. (Plaintiffs' Response (Response) to Defendants' Motion to Dismiss (MD) at ¶ 14.) Plaintiff Beneficiaries and Attorney Balentine also challenge Defendant's requirement that personal injury attorneys withhold distribution of disputed insurance proceeds from their clients, under threat of monetary penalties, including being personally liable for the reimbursement claim. (Amended Complaint at ¶ 2.)

Plaintiffs seek declaratory and injunctive relief against Defendant's MSP collection procedures, which they allege exceed the Secretary's authority under the Medicare statute and violate their rights under the Due Process Clause of the United States Constitution. *Id.* at ¶ 3.

**Plaintiff Haro**

Plaintiff Haro alleges that she was injured in an automobile collision on May 31, 2006. She suffered injury to her neck, which required a number of medical treatments. Medicare conditionally paid for her care. She brought a personal injury claim in connection with the accident and was represented by attorney Plaintiff Balentine. "Eventually, the

liability claim against the individual who caused the accident was settled with payment of damages to Plaintiff Haro." *Id.* at ¶¶ 14-16.

On January 12, 2009, Defendant's Medicare Secondary Payer Recovery Contractor (MSPRC) sent a letter to Plaintiff Haro, with a copy to her attorney, Plaintiff Balentine, demanding reimbursement for Medicare expenditures related to the accident. *Id.* at 17; (Complaint at Ex. A: MSPRC 1/12/2009 Letter). Medicare claimed payments in the amount of $2,705.77, which was reduced by a pro rata formula to account for attorney fees and costs related to her recovery action, for a total reimbursement demand of $1,682.72. Attached to the letter was a list of the Payment Summary relied on by Medicare to determine the reimbursement amount. *Id.*

The letter explained that Plaintiff Haro had the right to request a hardship waiver and to appeal the reimbursement determination. *Id.* She had 60 days or until 3/12/2009 to pay the reimbursement claim of $1,682.72 in full. She was told:

> [I]f you do not repay Medicare in full by 3/12/2009, you will be required to pay interest on any remaining balance, from the date of this letter, at a rate of 11.375% per year. If the debt is not fully resolved within 60 days of the date of this letter, interest is due and payable for each full 30-day period the debt remains unresolved. By law, all payments are applied to interest first, principal second. 42 C.F.R., 411.24(m). To avoid having to pay interest, you should repay Medicare in full within sixty (60) days of the date of this letter, even if you decide to request a full or partial waiver of the amount you owe or decide to appeal our determination (see Part IV) of this letter). If you receive a waiver of recovery or if you are successful in appealing our decision, Medicare will refund amounts you have already paid.

*Id.*[1]

The letter continued, as follows:

> You should also be aware that if you do not repay Medicare in full, it may decide to recover any amounts you owe (including accrued interest) from

---

[1] As noted by Defendant, interest does not work in the reverse as against the government for overpayments made by the beneficiaries. "Supreme Court precedent dictates that the government does not pay interest on amounts owed unless a statute specifically waives sovereign immunity for the payment of interest." (MD at 27 n. 12) (citation omitted). The MSP provisions are silent on this important aspect of the Secretary's reimbursement procedures.

> any Social Security or Railroad Retirement benefits to which you might otherwise be entitled, or from future Medicare payments. Your failure to respond as requested within sixty (60) days of the date of this letter may result in the initiation of additional recovery procedures **without further notice**, including referral to the Department of Justice for legal action and/or the Department of the Treasury for other collection actions. You should be aware that the Debt Collection Improvement Act of 1996 requires Federal Agencies to refer debts to the Department of the Treasury or its designated debt collection center for recovery actions including collection by offset against any monies otherwise payable to the debtor by any agency of the United States and through other collection methods. Under this and other authorities (31 U.S.C. 3720A), the Internal Revenue Service may collect this debt by offset against tax refunds owed to individuals or other entities.

*Id.*

Plaintiff Haro disputed reimbursement charges for ankle surgery that was not related to the accident. On January 21, 2009, Plaintiff Balentine wrote MSPRC appealing the reimbursement calculation, and Plaintiff Haro sent a check for $800, the correct reimbursement amount according to her. (Amended Complaint at ¶ 19.)

On March 3, 2009, MSPRC wrote Plaintiff Haro. It appears that MSPRC failed to recognize she had sent them $800 because it agreed to the reduction of the reimbursement claim in response to her "appeal" and made a new reimbursement demand for $696.13. MSPRC charged her $6.60 in interest for 30 days, which was for January 12, 2009, to February 12, 2009, for a total reimbursement of $702.73, which was due in full within 30 days of the March 3, 2009, determination letter. (Amended Complaint at Ex. A: MSPRC 3/3/2009 Letter.)

Plaintiffs filed this law suit on March 10, 2009. (Complaint.) On April 13, 2009, MSPRC sent Plaintiff Haro a check for $103.87, the difference between the $800 she had sent them and the final determination that the claim was $696.13. (Motion to Dismiss at Exhibits.) This action corrected the March 3, 2009, mistake of applying interest to Plaintiff Haro's claim; interest should not have accrued on Plaintiff Haro's claim, even under the policies and procedures challenged by the Plaintiffs, because her claim was resolved on appeal and paid in full within 60 days.

## Plaintiff Balentine

Plaintiff Balentine, attorney for Plaintiff Haro, alleges that under the threat of an enforcement action, including financial penalties against him, he has been instructed by the Defendant that he must hold settlement funds for Plaintiff Haro and other clients like her; he may not disburse these funds to his clients until the MSP claim has been paid, and he must use these funds to pay the disputed Medicare claim promptly. (Amended Complaint at ¶ 32-33.)

## Plaintiff McNutt

Plaintiff McNutt was injured in a motor vehicle accident on November 7, 2007, which caused him to incur medical services for which Medicare made conditional payments, and sought reimbursement after he recovered damages in a personal injury case filed in connection with the accident. (Amended Complaint at ¶¶ 22-24.)

Plaintiff McNutt's attorney, Ward Rasmussen informed Medicare of the personal injury recovery and on August 25, 2008, Mr. Rasmussen asked Medicare for the payment ledger and final claim amount that would be sought in reimbursement by Medicare. On December 15, 2008, MSPRC sent a demand letter for a reimbursement claim of $26,487.07, which said essentially the same thing as the letter sent to Plaintiff Haro.[2] *Id.* at ¶¶ 25-27.

---

[2]The 2008 letter to McNutt stated in relevant part: "Exercising Common Law authority and consistent with the Federal Claims Collection Act and 45 CFR 30.13, interest will be assessed if this debt is not repaid in full within 60 days of the date of this letter. Additionally, 45 CFR 30.14(a) provides that a debtor may either pay the det, or be liable for interest on the uncollectible debt while a waiver determination, appeal, or a formal or informal review of the debt is pending. Therefore, assessment of interest may not be suspended solely because further review is requested. Interest will be assessed at the rate of 11.375 percent. It should be noted, however, that you or your client may repay the debt to avoid accruing charges, but retain the right to dispute, appeal, or request waiver of the debt. If your client succeeds in the appeal or waiver request, Medicare will refund his/her money." (Amended Complaint at Ex. B MSPRC 12/15/2008 Letter.) The government does not pay interest so Plaintiff McNutt would not be able to recover lost interest on any overpayment. *See* n.1.

The $26,487.07 was due in full within 60 days, which was by February 15, 2009, regardless of whether he appealed or sought a waiver of the reimbursement claim, and if not paid in full, interest would begin to accrue at 11.375 percent per annum.

On December 18, 2008, Plaintiff McNutt's attorney appealed the amount of the reimbursement claim. The next correspondence from MSPRC was on March 11, 2009, when it informed Plaintiff's attorney that it was referring the matter to the Department of Treasury for delinquency and collection by "offset from other Federal agency payments, such as Social Security retirement or disability benefits," or by referral to the IRS and litigation. *Id.* at ¶¶ 28-29 (citing Ex. C: MSPRC 3/11/2009 Letter.) The MSPRC informed Plaintiff McNutt that as of March 11, 2009, he owed principal and interest of $26,989.23. After March 14, 2009, he would owe $27,240.31. After April 13, 2009, he would owe $27,491.39; after May 13, 2009, he would owe $27,742.47. (Amended Complaint at Ex. C: MSPRC 3/11/09 Letter.) These figures reflect that because McNutt did not pay the initial $26,487.07 MSP claim by February 15, 2009, MSPRC began charging him interest on this amount, calculated at 11.375% per year (or approximately $251 per month) for every 30 days after the date of the demand letter, December 15, 2009.

On April 15, 2009, Plaintiff McNutt's attorney, Mr. Rasmussen wrote the MSPRC again setting out the basis for the appeal and enclosed a check for $11,366.58, the amount the Plaintiff believed was related to his accident. (Amended Complaint at ¶ 30.) On April 21, 2009, Plaintiff McNutt joined in this law suit. On June 5, 2009, the Defendant sent the Plaintiff a letter notifying him that "debts pending appeal are excluded from referral to the Department of Treasury." Contrary to Defendant's March 11, 2009, notice that it was referring the matter to the Department of Treasury, the letter said that due to his appeal, his debt was not referred to Treasury and no referral to Treasury would take place while the matter was in litigation. (MD at Ex. 2: Dept. of Health and Human Services Letter 6/5/2009.) Plaintiff McNutt's reimbursement claim remains on appeal.

6

/////

## Declaratory and Injunctive Relief

Plaintiffs ask the Court to issue a declaratory judgment that Defendant's collection procedures exceed her authority under the Medicare statute and violate the Due Process Clause of the United States Constitution by: 1) demanding payment of the MSP reimbursement claim, under the threat of high interest charges, termination of Social Security and Railroad Retirement benefits and other collection actions, before resolution of any appeal or waiver request and 2) demanding attorneys withhold liability proceeds from their clients pending reimbursement to MSPRC for these claims prior to resolution of any appeal or waiver request. Plaintiffs seek a permanent injunction prohibiting the Defendant from demanding payment of the MSP reimbursement claim, specifically charging interest and taking collection measures against a beneficiary or the beneficiary's attorney, prior to a final decision from the Secretary resolving any appeal or request for waiver. Plaintiffs ask the Court to order the Defendant to send Plaintiffs a letter correcting the information in the MSP collection letter in accordance with the declaratory judgment and injunction.

## Motion to Dismiss

The Defendant seeks dismissal of the action under Federal Rule Civil Procedure 12(b)(1) for lack of jurisdiction because Plaintiffs Haro and Balentine lack standing to bring this action, and Plaintiff McNutt has failed to exhaust the statutorily mandated administrative review process. Even if the Court finds it has jurisdiction over the action, it must be dismissed because the Amended Complaint fails to state a claim. Fed. R. Civ. P.12(b)(6). The Secretary's actions are statutorily authorized under Medicare. There is no violation of the Due Process Clause to the United States Constitution because the Secretary has provided a comprehensive administrative process to dispute her reimbursement determinations, which must be post-deprivation given the government's important interest in maintaining the financial integrity of Medicare.

Standing, a jurisdictional prerequisite to any federal claim, must be established at the time of the filing of the Amended Complaint. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007). To have standing, a plaintiff must establish injury in-fact, causation, and redressability. *Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A court lacks jurisdiction over a case that is moot because "the parties lack a legally cognizable issue in the outcome." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1056 (9th Cir. 2007) (citations and quotations omitted).

### **Plaintiff Haro: Standing**

The defendant argues that Plaintiff Haro does not have standing to bring this action because she has not suffered any injury in-fact. She was never subject to any interest or debt collection because her appeal was resolved before the 60-day deadline for her reimbursement payment.

Plaintiff Haro argues that she planned to move to Minnesota to care for her elderly mother and was waiting for the personal injury settlement funds to pay for the move. Although her attorney received her personal injury settlement funds on December 15, 2008, she was denied $1,682.72 of the settlement funds as of Defendant's January 12, 2009, demand that the MSP claim be paid within 60 days. Pursuant to Defendant's collection procedures, this amount could not be released by her attorney until the reimbursement claim was resolved, which occurred on March 4, 2009, when MSPRC granted her appeal and reduced the reimbursement MSP claim to $702.73. It was April 13, 2009, before MSPRC realized she had paid them $800 and reimbursed her for her overpayment of $103.87, which included an overpayment of $6.60 in interest.

The Court does not know the total in settlement funds received by Plaintiff Haro, but they were reduced by $1682.72 instead of by $696.13 for 78 days or approximately two and a-half months before her appeal was resolved on March 4, 2009. To mitigate any interest she

might owe if her appeal was not resolved before the 60-day deadline of March 12, 2009, she paid MSPRC $800 on January 21, 2009. Because Plaintiff Haro's overpayment to MSPRC was not rectified until April 13, 2009, she did not receive the last one-hundred dollars of her settlement funds until then. Plaintiff Haro alleges that during this time she was forced to live in a motel because she had moved out of her home but lacked funds to move to her mother's house in Minnesota.

The Court finds that Plaintiff Haro has alleged an injury in-fact caused by Defendant's collection procedures, which was not redressed by Defendant's subsequent reimbursement to her for overpayments she made to MSPRC. Even if fully rectified, a case does not become moot for lack of standing where the challenged action is capable of repetition yet evading review. *Olmstead v. L.C.,* 526 U.S. 581, 594 n. 6 (1999). Plaintiff Haro continues to be a Medicare beneficiary, who may receive conditional payments from Defendant, subject to MSP claim recovery in the future, which would again subject her to the collection procedures challenged here.

## **Plaintiff McNutt: Exhaustion and Standing**

The Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff McNutt's claim because he has not yet exhausted his administrative remedies in contesting the MSP claim. (MD at 19.) The defendant relies on the Medicare Act's incorporation of exhaustion provisions from 42 U.S.C. § 405(h) of the Social Security Act, as follows:

> No findings of fact or decision of the [Secretary of Health and Human Services] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the [Secretary] or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

*Id.* at 20. "The plain language of this statute precludes federal court jurisdiction in Medicare cases except pursuant to 42 U.S.C. § 405(g), which provides:

> [a]ny individual, <u>after any final decision</u> of the [Secretary] made after a hearing to which he was a party . . . may obtain review of such decision by

9

> a civil action commenced within sixty days after the mailing . . . of notice of such decision . . ..

*Id.* This is the sole avenue for judicial review for Plaintiff McNutt because his "dispute with Medicare over the amount of Medicare's recovery claim and whether he should be charged interest pending appeal arises under the Medicare Act." *Id.*

If Defendant was correct in its portrayal of Plaintiff McNutt's claim, she would be correct that his claim is barred until exhausted administratively. The Plaintiff does not, however, seek review of a final decision by the Secretary regarding his MSP claim. The plaintiff seeks judicial review of the Secretary's decision to demand payment within 60 days of an initial MSP claim, prior to a final determination by the Secretary adjudicating any appeal or request for a waiver of the MSP claim, and her decision to charge interest or to initiate collection proceedings on this claim if not paid within 60 days.

The final position taken by the Secretary as to any disputed MSP claim, including Plaintiff McNutt's appeal, filed on December 18, 2008,[3] is subject to the exhaustion requirements of 42 U.S.C. 405(g) before there can be judicial review. Section 405(g) does not provide a mechanism to review the Secretary's decision to demand, prior to any opportunity to be heard, that the Plaintiff pay the claim in full prior to resolution of any appeal or waiver request or be subject to collection for the unpaid balance and interest calculated from the date of the demand. Also escaping review under section 405(g), is the Secretary's decision to instruct Plaintiff's attorney that as of her initial decision on the MSP claim, he may not release Plaintiff McNutt's settlement funds in that amount, or he will be subject to collection and penalty measures himself.

These are the decisions challenged by the Plaintiffs, including Plaintiff McNutt. The Secretary tries to sidestep the "procedural" distinction between this case and a standard claim dispute by asserting interest calculations and collection activities come only after resolution

---

[3]Plaintiff McNutt filed an administrative appeal disputing the MSP claim on December 18, 2008, which remains pending.

10

of any appeal or request for a waiver. (MD at 5, 21-24,26 (citing MSP Manual; http://www.cms.hhs.gov/manuals/downloads/msp105c07pdf (last visited June 10, 2009); Exs: Haro check (reimbursing her for overpayment, including interest); Letter to McNutt (notifying him that debts pending appeal are excluded from referral to the Department of Treasury)). These assertions are contrary to the express notices given the Plaintiffs and contrary to what in-fact happened here. The reimbursement check to Plaintiff Haro had to include interest because it was in-fact charged, and the letter to Plaintiff McNutt had to be written because he was in-fact notified that collection proceedings were being initiated against him. If the assertions in the Motion to Dismiss are the policies and procedures of the Secretary, there are clear deviations occurring in the implementation of the MSP program.

It might be argued that Plaintiffs only allege individualized errors, not applicable to the class, i.e., medicare improperly charged Plaintiff Haro interest on the claim back to its initiation and Medicare improperly notified Plaintiff McNutt that his claim was being transmitted to the Department of Treasury for collection. Defendant argues both of these mistakes were administratively rectified, in the same way the disputed interest on McNutt's MSP claim can be administratively addressed. The notices, however, are persuasive evidence of agency policy and procedure because they are standardized forms designed to be distributed to all beneficiaries subject to the reimbursement provisions of the MSP program. Misleading information contained in such a notice is of special concern because it is mailed directly to all beneficiaries for the purpose of instructing them on how to proceed and explaining their rights. In comparison, most beneficiaries will never see an agency Manual, and elderly beneficiaries will not be inclined to rely on web-site information, especially if it contradicts express information directly and personally sent to them. Individualized redressability has not and cannot correct these alleged programmatic procedural violations.

Plaintiffs unequivocally "do not question the right of Medicare to collect interest on unpaid MSP claims that are determined to be correct." (Response at 10 n.12.) Even if interest is only calculated and collection activities are only initiated pending any appeal or waiver request, the Plaintiffs' claim remains that the Secretary exceeds her authority by demanding payment within 60 days of an initial determination by MSPRC, instead of pending a final decision by the Secretary on the MSP claim if there is an appeal or waiver request. Plaintiffs' claim remains that the Secretary exceeded her authority by demanding that Plaintiffs' attorneys withhold from their clients insurance proceeds for disputed MSP initial claims prior to a final decision by the Secretary.

**Statutory and Constitution Merits of Plaintiffs' Claims**

Plaintiffs argue that Defendant's substantive arguments are based on the general authorization statute for the MSP program that makes reimbursement of Medicare conditional payments due 60 days "of receipt of information about the insurer's responsibility," 42 U.S.C. § 1395y(b)(2)(B)(ii), to the exclusion of the administrative appeals process, 42 U.S.C. § 395ff, expressly made available to beneficiaries to resolve MSP claim disputes. Plaintiffs argue that nothing in the general provisions authorizing the MSP program modifies the well-established administrative appeals process for resolving claim disputes nor authorizes the 60-day collection program implemented by the Secretary as an end-run around these appeal rights. (Response at 10.)

Plaintiffs' allegation that the Defendant is demanding payment of a disputed MSP reimbursement claim without an "opportunity to be heard at a meaningful time and in a meaningful manner," *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 261 (1987), is a classic due process claim. *See Goldberg v. Kelly*, 397 U.S. 254 (1970) (cannot terminate welfare payments without prior hearing). The Defendant's argument that in the end McNutt will only be required to pay Medicare the amount he owes ignores the fact that until then he is deprived of settlement funds that in the end may be determined to have been his.

The Plaintiffs state an arguable due process violation, under the balancing test approved by the Supreme Court, which requires this Court to consider: 1) the private interest affected; 2) the risk of erroneous deprivation and probable value of additional safeguards, and 3) the government or public interest in current procedures. *Mathews v. Eldridge*, 425 U.S. 319, 334-335 (1976). Plaintiffs argue Medicare beneficiaries, who by definition are elderly or disabled, are generally statistically classified as poor or near poor. (Response at 13 (citing Kaiser Medicare Chart book 2005 p. 6)). They have suffered injuries in accidents that gave rise to damages and have waited some period of time for liability and damages to be determined and paid. Plaintiffs are a group of people who tend to be in more immediate need of disputed settlement awards to meet the immediate costs of daily living and medical needs. The risk of an erroneous deprivation is high because conditional medical claims are generally paid over an extended period of time and all medical services, not just those related to the accident, are captured in the initial MSP claim.

The Defendant does not seriously[4] dispute these facts, except to assert that generally monetary injury is inadequate to establish irreparable harm. (MD at 23-24.) Defendant ignores cases involving the elderly, the handicapped, and the poor, where monetary damages involve subsistence benefits, the deprivation of which causes genuine economic hardship. *Kildare v. Saenz*, 325 F.3d 1078, 1093 (9th Cir. 2003) (citing *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989)); *Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir. 1993); see also *Ellender v. Schweiker*, 550 F. Supp. 1348, 1378 (N.Y. 1982).

---

[4]The Court does not seriously consider Defendant's argument that Plaintiff McNutt does not have a property interest in his settlement proceeds because he owes some of it to Medicare. (MD at 28.) *See Wall v. Leavitt* (*Wall I*), 2008 WL 4737164 * 10 (Calif. 2008) (describing same contention as frivolous because: 1) it is undisputed that the claim includes non-MSP monies and 2) the government's MSP claim is an equitable lien where legal title often remains in the hands of the person entitled to it on the face of the property). *Accord Zinman v. Shalala,* 835 F. Supp. 1163, 1171 (Congress granted Medicare a right to sue, not a perfected lien on settlement proceeds) (citing *Thomas v. Shelton,* 740 F.2d 478, 482 (7th Cir. 1984)).

The Defendant's strongest argument is that there is a compelling Government interest in maintaining the solvency of Medicare, which requires seizing insurance proceeds before a beneficiary can spend them. *Wall II*, 2008 WL 4737164 * 10 (on summary judgment, finding procedure for reimbursement, without predeprivation hearing, did not violate due process because compelling interest in ensuring the solvency of the Medicare program). Contrarily, other courts have found that the Medicare statutes should be construed broadly so as not to defeat its purpose, and the interests in minimizing costs should not be allowed to frustrate the remedial purposes of the Medicare program. *See Zinman*, 835 F. Supp. at 1168 (recognizing, but ultimately rejecting application of this case law to MSP claims to recover settlement proceeds that were not for the item or service conditionally covered by Medicare).

Because the Ninth Circuit has not spoken on how the balance should tip in a case such as this, the Court finds the Plaintiffs state a claim under the Medicare statutes and the Due Process Clause to the United States Constitution. *See Wall v. Leavitt (Wall II)*, 2009 WL 77090 *1 (Calif. 2009) (considering class action claim that predeprivation due process is necessary before the Secretary may deprive beneficiaries of settlement proceeds from non-Medicare sources; finding MSP procedures constitutional). Finding the Plaintiffs state a claim against Defendant and that Plaintiff Haro has standing to sue, Plaintiff McNutt will have standing too. It remains for the Court to determine whether to dismiss Plaintiff McNutt's claim because he failed to exhaust administrative remedies and whether Plaintiff Haro's attorney must be dismissed because he alleges only a generalized grievance without any personal interest in the case.

### **Waiver: Jurisdictional Exhaustion Requirement**

The exhaustion requirements of 42 U.S.C. § 405(g)) are waived, if the claims before the Court are collateral to Plaintiff McNutt's MSP claim, exhaustion through the

administrative process would be futile, and there is a colorable showing that denial of relief will cause irreparable harm. *Cares, Inc. v. Leavitt (Wall)*, 2007 WL 2023543 (Calif. 2007).

"A plaintiff's claim is collateral if it is not essentially a claim for benefits." *Johnson*, 2 F.3d 918, 921 (9th Cir. 1993) (citing *Bowen v. City of New York*, 476 U.S. 467, 483 (1986)). This is not a claim for benefits. Plaintiffs' allegations do not involve a host of individualized errors in making initial MSP claim determinations. Rather, this case is limited to a procedural challenge which will not require this Court to consider any disputed MSP claim, including Plaintiff McNutt's pending administrative appeal.

The plaintiff must make a colorable claim of irreparable harm, which requires a showing that is not "wholly insubstantial, immaterial, or frivolous." *Johnson*, 2 F.3d at 922 (citing *Briggs*, 886 F.2d at 1139); *Mathews,* 424 U.S. at 328-332). The defendant is correct that normally cases stating only monetary injury are not sufficient to show irreparable harm, but this ignores the financial vulnerability of Plaintiffs as a class and that the Plaintiffs' claims are not for monetary damages to redress monetary injury. Plaintiffs allege a violation of their due process rights under the United States Constitution, which "generally cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008), *reh'g en banc*, 568 F.3d 1028 (2009).

Plaintiff McNutt, like Plaintiff Haro, has been injured by the Defendant's policies and procedures. In August of 2008, he received a damage award related to his accident. On December 15, 2008, the Defendant demanded he pay the MSP claim of $26,487.07. He believes he owes only $11,366.58, which he paid on April 15, 2009. The Defendant has not yet resolved his appeal, so his attorney must retain $15,120.49 of his settlement award. Plaintiff McNutt has still not received his settlement funds in full.

Plaintiff McNutt, like Plaintiff Haro, is an elderly individual, many of which are on fixed and limited incomes. For these individuals, recovery of insurance proceeds far less substantial than the $15,120.49 disputed by Plaintiff McNutt may mean the difference

15

between having and not having basic necessities, such as housing, food, and medical care. Additionally, Plaintiff McNutt alleges that he suffered emotional distress caused by the Defendant's threat that she would charge him interest at a high rate on the unpaid balance of the claim and that she had referred the unpaid claim to the Treasury Department and might also attach his Social Security benefits. (Second Amended Complaint at ¶ 32.)

As already noted by this Court, the administrative review provisions afforded under section 405(g) are futile to redress the procedural decisions implemented by the Secretary. Because the Court will not be considering individual MSP claims, it does not need a detailed factual record for each claimant to decide this straightforward procedure and policy challenge. *Johnson*, 2 F.3d at 922 (citing *Briggs*, 886 F.2d at 1140). The Court does not require the benefit of agency expertise because the issue posed by the case is one purely of statutory construction in respect to whether or not the Secretary exceeds the authority granted her under the law, both the Medicare Act, as amended in 1980 adopting the MSP program, and the Due Process Clause of the United States Constitution.

The Court finds that the jurisdictional exhaustion requirements of 405(g) are waived and Plaintiff McNutt has standing to bring his claims.

## **Plaintiff Balentine: Standing**

The Secretary challenges Plaintiff Balentine's standing because he asserts only a "generalized grievance" against the Secretary.

Plaintiff Balentine is an attorney, who represented Plaintiff Haro in a tort claim against a primary insurer and negotiations with MSPRC, and who represents others like her. He alleges that the Defendant exceeds her statutory authority with her demand that he not disburse to his clients their personal injury damage awards or settlements in amounts covering initial MSP claims that are disputed and pending a final a decision by the Secretary. The defendant admittedly informed Plaintiff Balentine, like it informs all such plaintiffs' attorneys, that if he gives settlement funds to a client who then spends the money and cannot

16

reimburse Medicare, Balentine himself may be required to repay Medicare. The defendant argues that this may not be a result favored by Balentine, "but it is a statutorily recognized remedy if he releases funds to his client without first repaying Medicare." (MD at 17.) The Defendant's argument on the merits of Plaintiff Balentine's claim defeats her assertion that he fails to allege any particularized injury to himself. Because the Court finds that the Plaintiffs raise a colorable constitutional challenge to the Secretary's interpretation and implementation of Medicare's 60-day reimbursement provisions, Plaintiff Balentine has standing to bring this action.

He further argues that he is being co-opted by the Defendant into violating his client's constitutional due process rights and being inhibited from acting in their best interest. Plaintiff Balentine argues that this conflict of interest subjects him to potential disciplinary action or malpractice liability. (Response at 27.)[5] In Reply, Defendant argues there is no ethical conflict of interest because under Arizona Ethical Rule 1.15, provides: "When in the course of representation a lawyer possesses property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved." (Reply at 9.) This, however, ignores the challenged directive that the attorney pay the disputed amount of the MSP claim to the Secretary. It also ignores case law finding that the Secretary's reimbursement MSP claim is not a perfected interest. It is not a lien. It is only a right to sue. *Zinman*, 835 F. Supp. at 1171 (citing *Thomas v. Shelton*, 740 F.2d 478, 482 (7th Cir. 1984)).

Finally, the Defendant asserts it has reasonably interpreted the statute to require reimbursement within 60 days of the initial MSP claim determination, instead of after its final decision. (Reply at 10 (citing *see Your Home Visiting Nurse Service, Inc. v. Shalala*, 52

---

[5]Plaintiff Balentine attests that three to five percent of his approximately 80 open cases per month involve personal injury claims by Medicare beneficiaries who will be subject to reimbursement under the MSP procedures challenged by the Plaintiffs. (Response, Ex. D: Balentine Affid. at ¶ 4.)

17

U.S. 449, 453 (1999)). Defendant argues that "[P]laintiffs point to no statutory text that "unambiguously forbids" or makes impermissible, the Secretary's request (through the MSPRC) to a Medicare [beneficiary or] beneficiary's attorney that 'Medicare's claim be paid up front out of the settlement proceeds.'" *Id.* (citations omitted). Plaintiffs, however, point to the statutorily mandated right to administrative review and a final determination by the Secretary to resolve claim disputes and the Due Process Clause of the United States Constitution. The Defendant asserts this Court must defer to its opinion regarding its authority under the law because "an agency's construction of a statute is controlling so long as it falls 'within the bounds of reasonable interpretation.'" *Id.* This remains to be determined by the Court after balancing all the factors on a fully developed record.

## Standard of Review

The Supreme Court has explained that to survive a motion to dismiss for failure to state a claim upon which relief can be granted, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations and internal quotations omitted). The Court finds that Plaintiffs' Second Amended Complaint survives the Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6).

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Daniel v. County of Santa Barbara,* 288 F.3d 375, 380 (9th Cir.2002) (quoting *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000)). On a motion to dismiss, "[i]t is the burden of the complainant to *allege* facts demonstrating the appropriateness of invoking judicial resolution of the dispute." 15 *Moore's Federal Practice* § 101.73[1] (2005) (emphasis added). *Verizon California Inc. v. Peevey*, 413 F.3d 1069, 1084 (9th Cir. 2005).

The Court finds that Plaintiffs have alleged facts to support their claims of jurisdiction and have stated claims under the Medicare Statute and the Due Process Clause of the United States Constitution.

**Accordingly,**

**IT IS ORDERED** that the Defendant's Motion to Dismiss (document 16) is DENIED.

**IT IS FURTHER ORDERED** that an Order shall issue forthwith to set a Scheduling Conference in this case as required pursuant to Fed. R. Civ. P. 16.

DATED this 23rd day of November, 2009.

David C. Bury
United States District Judge

19